motion to vacate denied, with $10 costs, and he should be required to attend, under the order for his examination, at a date to be fixed. All concur.

## DICKER v. COHEN.

(Supreme Court, Appellate Term.　June 22, 1903.)

Dissenting opinion.　For majority opinion, see 84 N. Y. Supp. 189.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

MacLEAN, J.　The defendants, "insurance adjusters," undertook to obtain payment of a fire loss incurred by the brother-in-law and assignor of the plaintiff, who was brought to the Cohens by one Feingold, an insurance agent.　Some arrangement of employment was made.　Dicker asserts with positiveness and circumstance that the compensation was to be 10 per cent.　The defendants say that it was to be 50 per cent., and, having collected $300, they gave him $150. The trial justice believed the plaintiff's story, and rendered judgment for $100, striking something for some items, thus leaving the plaintiff $20 less than his demand, which was for the difference between 10 per cent. and 50 per cent. on $300.　The learned justice had enough before him to sustain his determination and the judgment.　Besides its own coherent plausibility, plaintiff's story was strongly corroborated by the defendants.　One of them testified that the ordinary commission for collection was 5 per cent. to 10 per cent.　In the agreement for compensation, signed in a struggling way by the plaintiff, the figures "50" are crowded together on the printed form in a manner suggesting that the "o" was added.　Admittedly collecting but $300, the Cohens, as if forefending trouble, had Dicker sign a receipt for the full $300.　They then drew a check for $150, had Dicker indorse it, then erased the drawer's signature, and gave him $150 in money.　It is not necessary to go far afield from the record for evidence of turpitude and tergiversation.　Besides all, the defendants had in court Feingold, who brought in Dicker, and who was very like their agent on their showing.　Dicker says they told him he was their agent, and that what he said was as good as what they said, and that he was the persuading factor, was participant in much of the whole business, and was in court; and they did not call Feingold.

The judgment should be affirmed, with costs.　All concur.

---

(87 App. Div. 284.)

PEOPLE ex rel. DELAWARE & H. CO. v. WELLS, President, et al.

(Supreme Court, Appellate Division, First Department.　November 6, 1903.)

1. TAXATION—ASSESSMENT—CERTIORARI—FINAL ORDER.

　　Tax Law, § 253 (Laws 1896, p. 883, c. 908), provides that, if it appear on the return to a writ of certiorari to review an assessment of taxes that the assessment complained of is illegal or erroneous and unequal for any of the reasons alleged in the petition, the court may order such assessment, if illegal, to be stricken from the roll, or, if erroneous or unequal, it may order a reassessment of the property of the petitioner, or the correction of his assessment upon the roll in whole or in part.　*Held,*

that the order in such proceedings was a final order, and where it set aside an erroneous assessment and directed a new assessment, no further proceeding could be had under the writ, but review of the reassessment must be by new proceedings.

**2. SAME.**

On certiorari to review an assessment of taxes a reassessment was ordered, which was made by a different board, which determined, among other things, the value of leasehold property to the lessees. a question not determined by the former board. *Held*, that as Charter, § 906 (Laws 1901, p. 386, c. 466), expressly authorized the issuance of certiorari to review such question, relator might apply anew, and need not seek his remedy in the proceedings under the former writ.

Appeal from Special Term, New York County.

Certiorari by the people, on the relation of the Delaware & Hudson Company, against James L. Wells and others, commissioners of taxes and assessments, to review a reassessment of the property of the relator for the year 1899. From an order superseding the writ, relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Alfred Opdyke, for appellant.

Geo. S. Coleman, for respondents.

INGRAHAM, J. The question presented on this appeal is novel, and relates to the method for the review of a reassessment by the commissioners of taxes and assessment of property subject to taxation when ordered by the Supreme Court under the provisions of section 253 of the tax law (chapter 908, p. 883, Laws 1896). The property of the relator subject to taxation was assessed by the commissioners of taxes and assessment, and to review that determination the relator applied for and was granted a writ of certiorari, which resulted in an order setting aside the assessment by the commissioners, and directing a reassessment. Section 253 of the tax law provides:

"If it shall appear upon the return to any such writ that the assessment complained of is illegal or erroneous or unequal for any of the reasons alleged in the petition, the court may order such assessment, if illegal, to be stricken from the roll, or if erroneous or unequal, it may order a reassessment of the property of the petitioner, or the correction of his assessment upon the roll, in whole or in part, in such manner as shall be in accordance with law."

The order here authorized is evidently a final order in the proceeding to correct the assessment. If the assessment is illegal, the court, by its final order, strikes it from the roll. If it is erroneous, the court may, by its order, either direct a reassessment by the tax commissioners, or correct the assessment in whole or in part. But in either event the action of the assessors is reversed, and the court either directs a proper assessment or directs the assessors to make a new assessment; and it seems to follow that the order is a final order, and ends the proceeding. When the assessors, under the order of the court, make a new assessment, there is a new determination, which has been made after the writ of certiorari is granted, and which could not be corrected in that proceeding. The form of the order entered in the former proceeding when the reassessment was ordered is not controlling.

It does not seem that the attention of the court was called to the provision that the costs should abide the final order in the proceeding; but it is evident that when the court once, by its order, set aside an assessment that had been made, and directed a new assessment, the object for which the writ of certiorari had been obtained in that proceeding was accomplished. The erroneous assessment had been set aside, and the matter had been remitted to the tax commissioners to proceed and make a new assessment. From the very nature of the writ of certiorari, its object is limited to a review of a determination already made. That determination we held to be based upon an erroneous theory. The crucial fact necessary to fix the amount of the relator's property subject to taxation not having been determined, it was sent back to the commissioners to make such a determination. The force of that writ was then expended. Its object had been attained, and there was no method by which that proceeding could be used to review a subsequent determination by the commissioners acting under the order in the special proceeding, which was then at an end.

Irrespective of this, however, it would seem that the relator was entitled to a writ of certiorari to review the determination of the tax commissioners in making the assessment. That this was a new and independent determination of the question as to the property of the relator subject to taxation for the year 1899 is apparent. A different board is now in office from that which made the determination which was subject to review in the former proceeding. The questions arising upon the new assessments are entirely different from those presented in reviewing the former proceedings of the tax commissioners. What these defendants have now determined is the value of the leasehold property to the lessees, a question which had not been determined by the former board, and upon the determination of which the amount of the relator's property subject to taxation depends. To review this determination of the defendant, by the express provisions of section 906 of the charter (chapter 466, p. 386, Laws 1901) the relator is entitled to a writ of certiorari; and assuming that the correctness of this assessment could have been determined in the old proceeding, as the statute expressly allows the relator to determine the validity of this assessment by a new writ, the court below was not authorized on motion to supersede it.

We think the order appealed from should be reversed, with $10 costs and disbursements, and the motion to supersede the writ denied, with $10 costs. All concur.

---

(87 App. Div. 248.)

### HALL v. REDINGTON.

(Supreme Court, Appellate Division, First Department. November 6, 1903.)

1. ORDER—RESETTLEMENT—POWER TO COMPEL.

    Where, on a motion to compel plaintiff's attorney to accept service of an order for examination of plaintiff before trial, the court indicated in a memorandum denying the motion that it had no jurisdiction to grant the order, and entered an order stating in general terms that such motion